IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVANIA

| | |
|---|---|
| JAMAL FAYYADH | : |
| | : |
| v. | : NO. 23-CV-4707 SWR |
| | : |
| MARTIN O'MALLEY, | : |
| Commissioner of Social Security | : |

**O P I N I O N**

SCOTT W. REID                                               DATE:  June 17, 2024
UNITED STATES MAGISTRATE JUDGE

Jamal Fayyadh brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI").  He has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.    *Factual and Procedural Background*

Fayyadh was born on February 11, 1980, in Iraq.  Record at 140.  He attended school there until the tenth grade.  Record at 167.  He worked in Iraq as a licensed electrician, and owned a small store between 2008 and 2013.  Record at 168, 203.  In 2005, he was attacked, and sustained multiple gunshot wounds in many parts of his body.  Record at 438-9.

On September 12, 2014, Fayyadh, who had meanwhile become a resident of the United States, filed an application for SSI.  Record at 140.  In it, he alleged disability since October 1, 2005, as a result of injury to his hands and legs.  Record at 140, 166, 451.

Fayyadh's application was denied on February 10, 2015. Record at 57. Fayyadh then requested a hearing *de novo* before an Administrative Law Judge. Record at 61, 64. The ALJ issued an unfavorable opinion on September 14, 2018, and the Appeals Council denied Fayyadh's request for review. Record at 1, 24. In Fayyadh's appeal to the United States District Court for the Eastern District of Pennsylvania, however, the case was remanded to the agency for a new hearing on the basis that the ALJ determined that Fayyadh was not disabled under the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpt. P, App. 2, despite his non-exertional impairments. Record at 532, 540.

Upon remand, a different ALJ held a hearing on June 25, 2020. Record at 562. On October 26, 2020, she, too, issued a decision denying benefits. Record at 559. However, on May 24, 2022, the Appeals Council remanded the matter to the ALJ for a third hearing, because technical problems at the June 25, 2020, hearing caused a portion of the second hearing to remain unrecorded. Record at 584.

The ALJ held a new hearing on January 24, 2023. Record at 429. On July 26, 2023, she issued a new decision, in which she once again found that Fayyadh was not entitled to benefits. Record at 400. Fayyadh filed no exceptions this time, and the Appeals Counsel did not assume jurisdiction. Accordingly, the opinion of the ALJ became the final decision of the Commissioner under 20 C.F.R. §404.984(d), which pertains to cases which have been remanded to the agency by a United States District Court. Fayyadh then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

3

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her July 31, 2023, decision, the ALJ found that Fayyadh suffered from the severe impairments of mononeuropathy of the right lower extremity; residuals of left upper extremity fracture and retained hardware; obesity; post-traumatic stress disorder; and major depressive disorder.  Record at 403.  She determined, however, that none of his impairments, and no combination of impairments, met or equaled a listed impairment.  Record at 404.

As to Fayyadh's RFC, the ALJ wrote the following:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §416.967(a) except that he can occasionally stoop, crouch, kneel, balance, and climb ramps and stairs; no crawling and no climbing ladders, ropes, or scaffolds.  He can occasionally operate foot controls bilaterally; have no exposure to unprotected heights or unprotected moving mechanical parts; occasional exposure to extreme cold and vibration; moderate noise levels.  The work should involve simple, routine tasks; simple decision-making; and no contact with the general public.  There should be few workplace changes, meaning the same duties are performed at the same station and location and during the same hours from day to day.  The individual may be off task up to 10% of the workday in addition to normal work breaks due to pain and absent one day a month.

Record at 407-8.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Fayyadh could work in such jobs as ink printer, dial marker, or lens inserter.  Record at 418.  She concluded, therefore, that he was not disabled.  *Id*.

4

Fayyadh's Request for Review challenges only the ALJ's finding that he would be off task no more than 10% of the workday in addition to normal work breaks, due to his pain. He argues that the ALJ lacked adequate support for the 10% figure, failing to build a logical bridge between her conclusion and the evidence of record. He also maintains that the vocational expert testimony upon which the ALJ relied is illogical, since 10% off each workday would add up to more than the one day off per month which the vocational expert said is the maximum tolerance of most employers.

IV.   *Discussion*

   A.   *The 10% Off-Task Figure*

Undoubtedly, Fayyadh's shooting was a catastrophic event which would be expected to leave him with significant limitations, both physical and mental. The medical records confirm this, and the ALJ accordingly found that Fayyadh could only engage in a limited range of sedentary work, with non-exertional limitations addressing his depression and PTSD. Fayyadh has not raised a claim as to these aspects of the RFC assessment. This, therefore, is not at issue.

Further, the record contains evidence supporting a conclusion that Fayyadh suffers from continuing pain, which is not surprising given the numerous gunshot wounds he sustained. For example, Fayyadh's treating physician, Dr. Marc Altshuler, observed that the pain in Fayyadh's right leg "may not ever fully resolve." Record at 267. The ALJ acknowledged this in finding Fayyadh would be off task at times due to his pain.

At issue, however, is the ALJ's finding that Fayyadh would be off task no more than 10% of the workday, excluding normal breaks. Fayyadh argues that the ALJ did not provide any narrative explanation for the 10% figure.

It is true that there is no passage in the ALJ's decision explicitly tying the 10% off-task figure to the evidence. Nevertheless, as is usual in ALJ decisions, the ALJ followed her RFC assessment with a multi-page review of the medical and opinion evidence which supported it. Record at 407-417. At the end of this discussion, the ALJ wrote: "The claimant's impairments are adequately accommodated by the reduced range of sedentary exertion work assessed herein. The objective evidence of record does not warrant additional limitations." Record at 417. It is inaccurate, therefore, to say there was no narrative explanation for the finding.

Crucially, the ALJ noted in her decision considerable medical evidence indicating that, despite his acknowledged impairments, Fayyadh retained sufficient concentration to work. Peter Garito, Ph.D., at the Northeast Community Center for Behavioral Health, found that Fayyadh had moderate difficulties in maintaining concentration persistence and pace. Record at 415, *citing* Record at 256 (February 10, 2015). The ALJ adopted Dr. Garito's finding of a moderate limitation, noting times in the medical record where Fayyadh reported impaired concentration. Record at 406-7, 980, 1535, 1538, 1540.

Yet, independent examining psychologist Danielle Meltzer, Psy.D., found that Fayyadh had intact attention and concentration. Record at 413, *citing* Record at 280 (January, 2015). At other mental health evaluations over the years, Fayyadh's concentration was found to be normal. Record at 969 (April, 2019); 977 (September, 2019); 1557 (March, 2021). The ALJ noted all of this evidence. Record at 414-6. Thus, her conclusion that Fayyadh's limitation in concentration was not work preclusive is reasonably well-supported by substantial evidence.[1]

---

[1] The ALJ also included other limitations in the RFC to address a limitation in concentration, including the need for work with simple routine tasks, and simple decision making, with few workplace changes. Record at 408.

Fayyadh, on the other hand, has not pointed to any evidence which specifically indicates that he would be off task more than 10% of the workday.  Instead, he simply argues that the extent of his physical and mental impairments "*could* result in an even greater off-task limitation." *Brief in Support of Request for Review* at 9 (emphasis supplied).  This puts him greatly at odds with the case from this District upon which he relies, *Williams v. Kijakazi*, Civ. A. No. 21-4413, 2024 WL 101853 (E.D. Pa. Jan. 8, 2024).

In *Williams*, the Honorable Richard A. Lloret remanded a case to the agency where the ALJ "did not provide his reasoning determining that 10% would be an appropriate amount of off-task time or explain how he determined that the off-task time included in the RFC was appropriately tailored to Mr. Williams' needs." 2024 WL 101853 at *7.  In *Williams*, however, the ALJ had not explained how his finding was consistent with specific testimony by the claimant, who suffered from Crohn's Disease, that he would visit the bathroom "at least eight time as day" for a minimum of half an hour each time.  *Id*. at *6.

Thus, in *Williams*, there was evidence of a quantifiable amount of time during which the claimant could not be working which was inconsistent with the ALJ's finding of no more than 10% of the workday off-task.  That evidence required explicit discussion.  There is no such evidence here.  Thus, *Williams* is clearly distinguishable.

More pertinent to this case than *Williams* is the decision of the Honorable Eduardo C. Robreno in *Colon-Toro v. Berryhill*, Civ. A. No. 17-5001, 2018 WL 6599619 (E.D Pa. Dec. 17, 2018).  There, Judge Robreno agreed with Magistrate Judge Marilyn Heffley's rejection of a complaint similar to Fayyadh's – "that the ALJ only picked this percentage [9% of the workday off task] because, at the hearing, the VE testified that 9% was the maximum off-task time

permissible for gainful employment" and the assessment was therefore "an ends-based analysis." 2018 WL 6599619 at 1, n. 1b.

Judge Robreno cited Judge Heffley's decision:

The ALJ concluded, based on a valid analysis of the evidence, that Colon-Toro's mental impairments would not preclude him from working but would cause some functional limitations. The ALJ chose to incorporate these limitations into the RFC by, in part, representing this as a percentage of time Colon-Toro's impairments would take him off-task. Based on the ALJ's discussion and analysis of the evidence, he clearly chose a percentage that allowed for employment because he did not believe Colon-Toro was incapable of work. In fact, the ALJ chose the most generous non-work-preclusive percentage possible. *See Hall v. Comm'r of Soc. Sec.*, No. 15-cv-12904, 2016 WL 8115401 at *9 (E.D. Mich. July 25, 2016) ("Hall's argument that the record contains no evidence that she would be off task exactly 9% of the workday cuts against her. Hall can point to no physician who imposed any specific percentage of the workday that she would be unable to work. Accordingly, the ALJ could easily have left this restriction out entirely rather than giving Hall a generous limitation of a 9% off-task limitation."); *Wennersten v. Colvin*, No. 12-cv-783, 2013 WL 4821474 at *3 (W.D. Wis. Sept. 10, 2013) ("Although the [ALJ] did not explain why he chose five percent instead of two percent or six percent, that lack of precision is not a reason to reverse the decision. The important point is that the [ALJ] did not find any evidence to show that plaintiff's ability to stay on task was impaired to the extent that it would keep him from working.") (Internal citations omitted). The Court finds that the ALJ's decision to add an off-task percentage to the RFC that was not per se work-preclusive was not arbitrary and was supported by substantial evidence.

*Id*.

Here, as in *Wennersten* and *Colon-Toro*, the important point is that the ALJ did not find evidence that Fayyadh's ability to stay on task was so limited that he could not work. Unlike the *Williams* claimant, Fayyadh has not pointed to medical opinion or objective data regarding his ability to stay on task. As the *Hall* court noted, in the absence of such evidence the ALJ could have left this restriction out entirely.[2] However, she obviously felt that Fayyadh's continuing

---

[2] Other courts have agreed with *Hall* on this point, including *Jeremy R.B. v. Commissioner of Soc. Sec.*, 2023 WL 355032 at *8 (S.D. Oh. Jan. 23, 2023) and *Joy v. Commissioner of Soc. Sec.*, 2022 WL 4397530 at *12 (N.D. Ga. Sep. 22, 2022), which also cites *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782 at *2 (W.D.N.Y. Mar. 6, 2018), where the court noted that when an RFC is more restrictive than the medical opinions, it is not usually a basis for remand.

pain required accommodation.  With Fayyadh, as in *Colon-Toro*, the ALJ chose the most generous non-work-preclusive percentage possible.

In the absence of evidence specifying that Fayyadh would be off task more than 10% of the day, it is impossible to agree with him that the absence of a  "scientific, reproducible, method for arriving at that specific number" is grounds for remand.  *Request for Review* at 9.  Given this, and given that substantial evidence supported the ALJ's conclusion that Fayyadh's limitation in concentration was not work-preclusive, there is no grounds for relief here.

B.  *The Vocational Expert Testimony*

At Fayyadh's hearing, the ALJ asked the vocational expert:  "What would you say in your opinion is the employer tolerance for off task and absences?"  Record at 454.  The vocational expert replied:  "Off task I find up to 10% [is] normally tolerated.  For absenteeism, up to one day per month is normally tolerated, anything above [is] work preclusive."  *Id*.  The expert also explained that his testimony regarding off-task rate and absenteeism was based on "not only [his] familiarization with the positions identified but almost 25 years in a vocational field."  Record at 456.

Fayyadh argues that the ALJ was not entitled to rely upon this testimony because it is "internally inconsistent."  He points out that ten percent of an eight-hour workday is 48 minutes, and that if an employee were off-task for 48 minutes five days per week, he would be off-task 960 minutes in a 20-workday month.  This amounts to two 480-minute workdays, which is double the tolerance time of one day of absence per month.

Although an ALJ is generally entitled to look to vocational expert testimony, there are times when  it does not provide substantial evidence upon which the ALJ can rely.  *Evans v. Kijakazi*, Civ. A. No. 21-554, 2023 WL 2671125 at *8 (M.D. Pa. Apr. 3, 2023), *citing Boone v.*

9

*Barnhart*, 353 F.3d 203, 211 (3d Cir. 2003), *and collecting other cases*. This includes instances where the vocational expert's methodology is unreliable. *Id.*, *citing Reunger v. Kijakazi*, 23 F.4th 760, 762-4 (7th Cir. 2022) (vocational expert testimony could not be relied upon where "the manner in which the vocational expert obtained her job numbers was unclear and where the vocational expert failed to justify the methodology that she used to obtain those numbers").

In this case, however, Fayyadh's counsel examined the vocational expert, even obtaining his confirmation that an individual who would miss three or more days of work was unemployable. Record at 455. Counsel did not, however, challenge the proposition that employer tolerance permitted 10% off task per day, but only one absence per month. Nor did counsel have any "questions or objections" on the vocational expert's qualifications. Record at 451-2. The vocational expert, therefore, had no opportunity to explain his testimony, and the ALJ was unaware of the issue Fayyadh now raises.

What is more, this issue is more philosophical than factual. In other words, Fayyadh has not shown that the vocational expert was wrong about employer preferences, but only suggests that the preferences are misguided and illogical. In Fayyadh's exceptions to the ALJ's October 26, 2020, decision, he raised the same issue, citing a Harvard Business Review article on "presenteeism" versus absenteeism. Record at 708. However, the approach taken by the vocational expert was not so obviously misguided as to demand remand for clarification; it is plausible that employers might prefer an employee to come in and work most of the day for all but one day per month, rather than leave an empty workstation two days per month.

On these facts, it cannot be said that the ALJ erred in relying on the testimony of the vocational expert. Fayyadh has not, therefore, shown that he is entitled to relief on this claim.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE